IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MARLENE KRAJEWSKI, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB 08-2406 |
| METROPOLITAN LIFE INSURANCE COMPANY, | * | |
| | * | |
| Defendant. | | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiff Marlene Krajewski ("Krajewski") filed this single-count Complaint under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C.§1001 *et seq*., against Defendant Metropolitan Life Insurance Company ("MetLife"). Krajewski seeks judicial review of MetLife's unfavorable administrative decision concerning her 2007 application for long-term disability benefits under the St. Paul Travelers Disability Plan ("the Plan"). Pending before this Court are MetLife's Motion for Summary Judgment (Paper No. 13) and Krajewski's Cross-Motion for Summary Judgment (Paper No. 14). The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2008). For the reasons stated below, MetLife's Motion for Summary Judgment is GRANTED and Krajewski's Cross-Motion for Summary Judgment is DENIED.

## BACKGROUND

The St. Paul Travelers Disability Plan is a self-funded, ERISA-governed welfare plan that provides both short-term and long-term disability ("STD" and "LTD" respectively) benefits to eligible participants. The Plan's provisions are discussed at length for the participants in the

Summary Plan Description. (R. 001-030.)[1] The Plan is self-funded in that it is both administered and insured by MetLife. As plan administrator, MetLife is vested with "discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan." (R. 128.)

A claimant is considered disabled under the terms of the Plan for the purposes of LTD benefits when she is under a physician's regular care and MetLife determines that:

- During the elimination period and up to the next 24 months, [the claimant is] unable to perform one or more of the substantial duties of [her] occupation on an active employment basis because of an injury or sickness,
- [The claimant is] unable to earn more than 80% of [her] pre-disability monthly earnings due to the same sickness or injury.

(R. 014-15.) The Plan defines the term "occupation" as the essential functions a person regularly performs that provide her primary source of earned income. (R. 097.)

When a claim is made for benefits, a claimant must provide proof at his or her own expense, which is defined by the Plan as written evidence satisfactory to MetLife establishing "the nature and extent of the loss or condition," MetLife's "obligation to pay the claim," and "the claimant's right to receive payment." (R. 098.)

On December 15, 2006, Plaintiff Marlene Krajewski stopped working as a case manager for her employer, St. Paul Travelers, due to back pain. (R. 340, 374.) After submitting a claim to MetLife for STD benefits, Krajewski received benefits through June 22, 2007, the maximum STD period available under the Plan. (R. 134, 336.) MetLife granted initial approval of Krajewski's claim for LTD benefits for the period from April 16, 2007 to April 16, 2009, with further benefits pending an updated medical certification. (R. 413.) However, Krajewski never

---

[1] MetLife submitted the Administrative Record on May 29, 2009, which is cited by reference to Bates numbers.

received any LTD benefits because, as discussed below, MetLife subsequently denied Krajewski's claim for LTD benefits. (R. 293-94.)

In conjunction with her claim, Krajewski provided MetLife with various medical records. Among the records Krajewski supplied was a report dated April 10, 2007 from her orthopedic surgeon, Lawrence Shin, M.D., detailing her history of back pain and recommending that she obtain an MRI scan to help ascertain the best treatment plan. (R. 319.) Krajewski provided records dated May 24, 2007 from her neurosurgeon, Reginald J. Davis, M.D., which indicated that nonsurgical measures had provided her with "substantial relief" of her symptoms. (R. 323.) Krajewski supplied an Attending Physician Statement ("APS") completed by her orthopedist, Ira Fedder, M.D. (R. 296-332.), which referenced his office notes explaining that Krajewski's back condition was improving and would not need surgery. (R. 306, 314.)

A Nurse Consultant at MetLife reviewed Krajewski's file. The Nurse Consultant found that Krajewski's medical records did not show "a functional impairment that would prevent [Krajewski] from performing the duties of [her] own job." (R. 146.) Accordingly, on August 21, 2007, MetLife sent Krajewski a letter denying her claim for LTD benefits. The denial letter stated that MetLife had determined that Krajewski was not disabled within the meaning of the Plan because:

> The documentation shows that you have made good progress and no longer have a functional impairment that would prevent you from performing your sedentary occupation as a Claim Representative for any employer.

(R. 293-94.)

On December 27, 2007, Krajewski submitted an administrative appeal of MetLife's denial, which she supplemented with additional medical records. (R. 254-82.) Krajewski supplied the results of a functional capacity evaluation ("FCE") she commissioned, which was

taken on September 13, 2007 by Sheila Mongeon, P.T. (R. 260.) The FCE described Krajewski's job as follows:

> She worked Monday – Friday, 8 hours per day. She stated that she sat for most of the day, interviewing claims, phone calls, computer work, getting up to get files/put them away. She may have to bend down to reach into a drawer or reach overhead. She believes that she had a good chair and had a headset for the phone work. Her main concern for returning to work is all the sitting that is required (in addition to the 1 hour of travel time – one way – to and from work).

(R. 262.) The FCE found Krajewski's job requires occasional lifting and carrying of ten pounds or more. (*Id*.) The FCE concluded that based upon Krajewski's physical exam:

> [Krajewski] should alternate positions every 30 minutes (maximum), avoid twisting and awkward posture, and minimize the need for forward bending. For sustained sitting, she should have an adjustable chair with use of a pillow or towel to place under her pelvis for proper weight distribution (to her legs vs. her lumbar spine).

(R. 260.) Krajewski also included a report by a second neurosurgeon, Charles J. Lancelotta, M.D., stating that "[Krajewski] probably does have some type of recurrent root compression in the lumbar region" and adding that he "believe[d] her symptoms are genuine." (R. 196.) The most recent letter from Dr. Lancelotta in Krajewski's file indicated that based upon her FCE and a follow-up examination, Dr. Lancelotta believed that Krajewski "can function at a sedentary work level." (R. 205.)

Finally, Krajewski submitted a vocational analysis by an outside vocational rehabilitation consultant, Janine L. Preston, M.S. (R. 254-56.) Based upon her conversation with Krajewski, the Nurse Consultant describes Krajewski's position of Claims Representative in her analysis as "an individual who works on a computer inputting information into the files, including notes, emails and sets-up reserves." (R. 280.) The vocational analysis reflected Krajewski's description of her job as requiring use of the phone, driving, stapling, hole punching and filing, and potentially moving case records weighing 25 pounds or more. (*Id*.) The analysis concluded

that Krajewski "can not [sic] perform the essential and core job duties required of a claims representative at a competitive level of speed and accuracy over the course of an eight hour work day with the present physical restrictions in place."  (R. 281.)

After reviewing these records, MetLife forwarded a copy of the claim file to neurosurgeon J. Parker Mickle, M.D., an independent physician consultant ("IPC"), for his medical opinion.  (R. 241-44, 251.)  As a part of his evaluation of the case file, Dr. Mickle contacted Krajewski's neurosurgeons, Drs. Lancelotta and Davis.  (R. 241.)  One of Dr. Lancelotta's employees advised Dr. Mickle over the telephone that Dr. Lancelotta stated his opinion, in a letter dated September 20, 2007, that Krajewski was probably capable of sedentary work.  (R. 276.)  A member of Dr. Davis' staff responded that it could not comment on Krajewski's medical issues because Dr. Davis had not seen Krajewski since May 24, 2007.  (R. 241.)  Taking into account his review of the entire file and the information obtained from these calls, Dr. Mickle concluded that the evidence did not support a finding that Krajewski's back pain would prevent her from performing her job.  (R. 243.)

MetLife subsequently forwarded copies of the IPC report to Krajewski's treating physicians and requested comments and further evidence that would support opposing conclusions.  (R. 157-58, 237.)  Dr. Fedder replied that he did not have an opinion of the IPC report.  (R. 237.)  Dr. Davis responded that he had only met with Krajewski once, had encouraged her to exhaust all methods of treatment, and could not otherwise comment.  (R. 226)  Dr. Shin similarly responded that he had no opinion of the IPC report, had only seen Krajewski once, and had recommended she have an MRI and bone scan.  (R. 159, 229.)  Dr. Lancelotta did not respond to the IPC's report.  (R. 229.)  MetLife also had a second Nurse Consultant review

the case file, who concluded that the medical records did not support Krajewski's disability claim.  (R. 154-55.)

On February 6, 2008, MetLife sent Krajewski a letter affirming its denial of LTD benefits.  (R. 227-230.)  Following receipt of this letter, Krajewski filed the present action against MetLife on September 17, 2008.

## **STANDARD OF REVIEW FOR SUMMARY JUDGMENT**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id*. at 249.  In that context, a court is obligated to consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). However, Rule 56 mandates summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

When both parties file motions for summary judgment, as here, the court applies the same standards of review.  *Taft Broad. Co. v. United States,* 929 F.2d 240, 248 (6th Cir. 1991); *ITCO Corp. v. Michelin Tire Corp.,* 722 F.2d 42, 45 n.3 (4th Cir. 1983) ("The court is not permitted to resolve genuine issues of material fact on a motion for summary judgment – even where . . . both parties have filed cross motions for summary judgment.") (emphasis omitted), *cert. denied,* 469 U.S. 1215 (1985).  The role of the court is to "rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard."  *Towne Mgmt. Corp. v. Hartford Acc. & Indem. Co.,* 627 F. Supp. 170, 172 (D. Md. 1985).  "[B]y the filing of a motion [for summary judgment] a party concedes that no issue of fact exists under the theory he is advancing, but he does not thereby so concede that no issues remain in the event his adversary's theory is adopted."  *Nafco Oil & Gas, Inc. v. Appleman,* 380 F.2d 323, 325 (10th Cir. 1967); *see also McKenzie v. Sawyer,* 684 F.2d 62, 68 n.3 (D.C. Cir. 1982) ("[N]either party waives the right to a full trial on the merits by filing its own motion.").  However, when cross-motions for summary judgment demonstrate a basic agreement concerning what legal theories and material facts are dispositive, they "may be probative of the non-existence of a factual dispute."  *Shook v. United States,* 713 F.2d 662, 665 (11th Cir. 1983) (citation omitted).

## **STANDARD OF REVIEW UNDER ERISA**

A denial of benefits under an ERISA plan must "be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  In ERISA cases that involve a plan granting the administrator discretionary authority, "it is well-settled that courts review the denial of benefits under [the]

policy for 'abuse of discretion.'" *Guthrie v. Nat'l Rural Elec. Coop. Ass'n Long-Term Disability Plan*, 509 F.3d 644, 649 (4th Cir. 2007). Here, the Parties agree that the Plan grants MetLife such discretionary authority, thus the appropriate standard of review is abuse of discretion.[2] (Def.'s Mot. Summ. J. 9; Pl.'s Reply 1.)

Under the abuse of discretion standard, "the district court functions as a deferential reviewing court with respect to the ERISA fiduciary's decision." *Evans v. Eaton Corp.*, 514 F.3d 315, 321 (4th Cir. 2008). A court "will not disturb an ERISA administrator's discretionary decision if it is reasonable . . . ." *Id.* at 322. An administrator's decision is reasonable "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Id.*; *Guthrie*, 509 F.3d at 650. Krajewski bears the burden of proof and must provide the requisite evidence to support a claim for disability benefits. *Elliott v. Sara Lee Corp.*, 190 F.3d 601, 602 (4th Cir. 1999).

In assessing the reasonableness of a plan administrator's decision, courts should consider the language of the plan, whether the decision-making process was reasoned and principled, and the degree to which the evidence supports the decision. *Guthrie*, 509 F.3d at 651; *Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 342-43 (4th Cir. 2000). Substantial evidence is defined as "the quantum and quality of relevant evidence that is more than a scintilla but less than a preponderance and that a reasoning mind would accept as

---

[2] Krajewski conceded in her opening brief that "Defendant has granted itself discretionary authority to determine eligibility for benefits under the plan." (Pl.'s Opp. 10.) Nonetheless, Krajewski also initially argued that a *de novo* standard of review is applicable because of MetLife's conflict of interest as both Plan provider and Plan administrator and because of alleged procedural irregularities in MetLife's processing of Krajewski's claims. (*Id.* at 10-11.) However, in her subsequent brief, Krajewski clearly states her agreement with Defendant that a deferential standard of review is appropriate. (Pl.'s Reply 1.)

sufficient to support a particular conclusion." *Donnell v. Metro. Life Ins. Co.*, 165 Fed. Appx. 288, 295 (4th Cir. 2006) (quotation omitted).

## ANALYSIS

The question before MetLife was whether Krajewski was entitled to LTD benefits under the Plan.

The claim file which formed the basis of MetLife's initial decision included reports made by Krajewski's orthopedic surgeon, neurosurgeon and orthopedist. Overall, these reports generally indicated that Krajewski's back condition was improving. Krajewski's orthopedic surgeon confirmed that degenerative discs were the source of Krajewski's recurring back pain, but noted that in the past a series of epidural cortisone injections provided "excellent relief of her symptoms," as did a previous surgery. (R. 318.) Krajewski's orthopedic surgeon concluded only that Krajewski should obtain an MRI scan to determine the best future treatment plan. (R. 319.) Krajewski's neurosurgeon found that she has symptomatic degenerative disc disease and lumbar spondylosis, but concluded that nonsurgical measures had provided her with "substantial relief" of her symptoms and that if such conservative measures continue to help Krajewski improve then "no further intervention need be contemplated." (R. 323-24.) Krajewski's orthopedist stated that Krajewski's back condition was improving with physical therapy and that she would not need surgery. (R. 306.)  None of these records established that Krajewski was incapable of performing her job. Furthermore, MetLife had a Nurse Consultant independently review these records, and she found that Krajewski had made "good progress" and no longer had a functional impairment that "would prevent [Krajewski] from performing the duties of [her] own job." (R. 146.)

Case 1:08-cv-02406-RDB   Document 20   Filed 09/14/09   Page 10 of 12

The claim file MetLife considered upon appeal was over 400 pages long. The file contained the supplementary medical records Krajewski provided with her appeal, including reports from a second neurosurgeon, an outside vocational rehabilitation analysis and the results of an FCE. Only one of these documents, the vocational rehabilitation consultant's report, plainly supports Krajewski's claim that she cannot perform the duties of her job due to her back pain (R. 281.), and this report conflicts with the neurosurgeon's assessment that Krajewski was, in fact, capable of performing a sedentary position.[3] (R. 205, 241.) Thus, the additional evidence Krajewski submitted during the administrative appeal was inconclusive at best. On the other hand, the IPC report and the second Nurse Consultant report MetLife commissioned upon appeal both supported MetLife's initial determination that Plaintiff was not disabled under the Plan. Thus, Krajewski's additional evidence was insufficient to prove that the Plan administrator's decision to deny benefits was unreasonable. After considering Krajewski's file in its entirety, this Court finds that MetLife's benefits determination was reasonable and supported by substantial evidence.

Krajewski's remaining argument is that MetLife did not perform a full and fair review of her claim because it did not have a copy of her complete job description and did not order its own vocational evaluation of Krajewski. Neither of these arguments is persuasive.

The multiple job descriptions Krajewski provided at the time she applied for LTD benefits and upon appeal provided a sufficient basis for MetLife to make a reasoned decision. Krajewski initially submitted a job description identifying herself as a "claims adjustor," noting that she drove to work and that her job duties involved sitting at a desk. (R. 325-26.) The FCE Krajewski later supplied similarly stated that her job entailed sitting for most of the day, and

---

[3] The FCE does not explicitly state that Krajewski can or cannot perform the functions of a sedentary job, thus it does not clearly support or contradict Krajewski's claim.

added that her position involved interviewing claims, making phone calls, doing work on a computer, bending down to reach drawers, getting up to retrieve or return files, and occasionally lifting and carrying items weighing ten pounds or more. (R. 262.) Furthermore, Krajewski admits that she "thoroughly" discussed her job responsibilities with her vocational rehabilitation consultant, and the consultant's notes regarding that conversation were available to MetLife for review during the appeal process. (Pl.'s Opp. 14.) Notably, the vocational rehabilitation consultant's description of Krajewski's job functions is quite similar to the aforementioned job descriptions, adding only that Krajewski's job also required "field driving" to inspect damages, stapling, hole punching and that some of the case records she reviewed could weigh more than 25 pounds. (R. 280.)

Krajewski's argument is also flawed since she does not specify what details these job descriptions overlooked, or explain how such details were necessary to the determination of her benefits claim. Krajewski's reliance on *Smith v. Continental Casualty Co.*, 450 F.3d 253 (6th Cir. 2006) to prove that these job descriptions were inadequate is unconvincing. In *Smith*, the United States Court of Appeals for the Sixth Circuit considered a plan provider's failure to obtain *any* job description prior to its initial benefits determination, as well as the claim administrator's choice to read only part of the nine page job description that was available upon appeal, in finding that the defendant's decision to deny benefits was arbitrary and capricious. *Id.* at 264. By comparison, the evidence in this case shows that the record before MetLife contained a sufficient job description, and there is no evidence MetLife did not fully review Krajewski's case file. Moreover, in *Smith*, the failure to review plaintiff's full job description was only one of many factors the court weighed when making its decision. *Id.* Krajewski does not argue that

any of the other factors the Sixth Circuit emphasized – such as the defendant's manipulation of plaintiff's medical records and failure to contact plaintiff's primary physician – are at issue here.

Krajewski's final argument that MetLife should have ordered its own vocational evaluation is also unsuccessful.  The case Krajewski cites in support of this contention, *Piepenhagen v. Old Dominion Freight Line, Inc.*, No. 7:08-CV-00236, 2009 U.S. Dist. LEXIS 15519, at *1 (W.D. Va. Feb. 27, 2009), actually strengthens MetLife's defense that a second vocational analysis was unnecessary.  In *Piepenhagen*, the court held that the plan administrator was not required to obtain any vocational analysis at all because there was enough evidence on the record to support its denial of benefits, adding that, "[n]ot a single court has held that vocational evidence is required per se." *Id*. at *29.  Considering *Piepenhagen* holds that some benefits determinations require no vocational analysis in the first place, and that MetLife reviewed the report by the vocational consultant of Krajewski's choice, Krajewski's argument fails.

Accordingly, this Court finds that MetLife's decision denying Krajewski's claim for LTD benefits was not an abuse of discretion.  For the reasons stated above, MetLife's Motion for Summary Judgment (Paper No. 13) is GRANTED and Krajewski's Cross-Motion for Summary Judgment (Paper No. 14) is DENIED.

A separate Order follows.


Dated: September 14, 2009         /s/_____
                                  Richard D. Bennett
                                  United States District Judge